SOUTHWEST GAS CORPORATION, A CORPORATION, APPELLANT AND CROSS–RESPONDENT, v. THE PUBLIC SERVICE COMMISSION OF NEVADA, RESPONDENT AND CROSS–APPELLANT.

No. 6078

September 10, 1970                    474 P.2d 379

*Guild, Guild and Cunningham,* of Reno, *L. V. Robertson, Jr.,* and *Darrell Lincoln Clark,* of Las Vegas, for Appellant and Cross-Respondent.

*Harvey Dickerson,* Attorney General, *John J. Sheehan,* Deputy Attorney General, for Respondent and Cross-Appellant.

**OPINION**

By the Court, BATJER, J.:

This is an appeal from a review by the district court of an order of the respondent, Public Service Commission of Nevada, requiring the appellant, Southwest Gas Corporation, to make refunds to its customers because of its failure to use altitude adjustment factors and because it employed long proration in its billing practice. The respondent cross-appeals from that part of the judgment of the district court enjoining it from requiring the appellant to replace certain gas meters within a fixed period of time.

During the early part of 1968 the respondent received numerous complaints directed at the appellant concerning its manner and method of billing in northern Nevada. On March 27, 1968, the respondent determined that pursuant to NRS 704.120 and NRS 704.450, a hearing should be held to inquire

into the "practice, services, regulations, meter reading, billing and accounting of Southwest Gas Corporation with respect to its Northern Nevada Division, and more particularly, whether Rule No. 5 of the filed tariff has been properly adhered to."

On April 16th and 17th, 1968, a hearing was held in Carson City, Nevada. Respondent's final order, dated December 18, 1968, was issued as a result of that hearing and provided, *inter alia:* "IT IS ORDERED That Southwest Gas Corporation shall amend its Northern Nevada Rule No. 5, Section 1, Proration of Bills, to reflect that in the computing of bills, short prorations (i.e. proration of bills rendered for less than a 27-day period) shall be allowed, but long prorations (i.e. proration of bills rendered for more than a 33-day period) shall be prohibited; that as a consequence of certain inequities arising out of the manner in which bills to various customers were prorated, Southwest shall refund to its Northern Nevada customers all portions of their bills attributable to long prorations made from November 1, 1967, to the present time; that all such refunds shall be computed and paid within sixty (60) days from the date of this Final Order; that the amount of the refund to each customer shall be equal to the difference between the total amount collected from the customer on long prorated bills (i.e. all long prorated bills rendered to the customer from November 1, 1967, to the present time) and the total amount that would have been collected from such billings if no long prorating had occurred; . . ."

". . . [W]ithin thirty (30) days from the date of this Final Order, Southwest shall file an amended Northern Nevada Rule No. 2A, Description of Service; that said Rule, as modified, shall require measurements for altitude to be in conformance with the current edition of California Natural Gas Association Bulletin TS–561 and such amendments or revisions of said Bulletin as may be incorporated therein from time to time hereafter; that within sixty (60) days from the date of this Final Order, each present Southwest customer in Northern Nevada, to whom a bill or bills have been rendered without an altitude adjustment calculated in conformance with the aforesaid Bulletin, shall receive a refund equal to the total amount by which said customer's bill or bills would have been adjusted for altitude had Southwest adhered to the measurements provided for in the aforesaid Bulletin; . . ."

". . . [T]hat in the event one of Southwest's Rockwell "150" meters in Northern Nevada malfunctions hereafter, the company shall retire such meter and replace it with a temperature compensated measuring device; that by December 31, 1969,

Southwest shall have replaced with temperature compensated measuring devices at least 250 of the company's Rockwell "150" meters in Northern Nevada; that by December 31, 1970, Southwest shall have replaced with temperature compensated measuring devices the remainder of the company's Rockwell "150" meters in Northern Nevada; . . ."

On January 7, 1968, appellant filed its complaint with the trial court requesting that the respondent be permanently enjoined and restrained from enforcing that portion of its final order: (1) requiring that the appellant "refund to its Northern Nevada Division customers all portions of their bills attributable to long prorations made from November 1, 1969 to the present time;" (b) that portion requiring the appellant to refund to customers whose bills have been rendered without an altitude adjustment calculated in conformance with the California Natural Gas Association Bulletin TS–561, a sum equal to the total amount by which said customers' bill or bills would have been adjusted for altitude had appellant adhered to the measurements in that bulletin; and (c) that portion requiring that appellant, by December 31, 1969, "replace with temperature compensated measuring devices at least 250 of the appellant's Rockwell "150" meters in Northern Nevada; and that by December 31, 1970, "appellant, shall have replaced with temperature compensated measuring devices the remainder of Rockwell "150" meters in Northern Nevada."

The part of the respondent's order requiring refunds by the appellant rests on evidence, that during the times in question, in the Carson City area, the appellant employed an inadequate meter reading force; that at least one of those meter readers made many "curb" or fake readings; that bills were estimated without justification and in approximately two-thirds of the billings about which customers had complained the meters had been read late and long proration billing had been employed by the appellant. It was conceded that long proration billing favored the appellant.

The evidence also showed that all customers in the South Lake Tahoe area were billed at the same rate although there existed an altitude variation of some 1,700 feet between those customers living at the lake shore and those in the Daggett Pass area. Furthermore, the record indicated that the appellant had on file with the respondent, the California Natural Gas Association Bulletin TS–561, and had adhered to those schedules in other parts of its service area.

When an order of an administrative board is challenged, the function of this court is identical to that of the trial court. Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963); McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961). We must review the evidence presented to the commission and determine whether that body abused its discretion by acting arbitrarily or capriciously. Our review reveals that the respondent acted within the permissible limits of its discretion in ordering the refunds.

The appellant argues that the long prorations were in accordance with the appellant's Rule No. 5,[1] filed with and approved by the respondent, and supports its argument by relying upon the testimony of one of the respondent's witnesses to the effect that the actual proration was in accordance with that rule. The appellant ignores the fact that before it was ever authorized to prorate pursuant to the terms of Rule No. 5, there must exist "reasons beyond its control" to justify reading a customer's meter other than on the scheduled reading date. While there is evidence of "curb" or fake meter reading, estimations and meter reading well beyond the 33-day limit allowed by Rule No. 5, there is no evidence of any reasons beyond the control of the appellant to justify such conduct which resulted in its use of long prorations. This conduct has been found to be

---

[1]RULE No. 5 (in pertinent part):
"*BILLS FOR SERVICE*
"A.   *Rendering of Bills*
"Bills for service will be rendered each customer not less frequently than once each month and will be based on meter registration.
"1.   Bills for gas service will show the reading of the meter at the end of the period for which the bill is rendered, the date of such reading, the BTU adjustment factor and the number of therms of gas used. The BTU adjustment factor will vary whenever there is a deviation of 10 BTU's or more in the average monthly heating value of gas purchased from the company's supplier.
"....
"3.   If, for reasons beyond its control, the Utility is unable to read the customer's meter on the scheduled reading date, the Utility may bill the customer for estimated consumption during the billing period, subject to adjustment at the time the meter is next read.
"*Proration of Bills*
"1.   The charges applicable to opening periods, closing bills and bills rendered for periods of less than 27 days or more than 33 days will be computed as follows: The amount of the minimum charge and the quantity in each of the several quantity rate blocks will be prorated on the basis of the ratio which the number of days in the period bears to the average billing period of 30 days. The measured quantity of usage will be applied to such prorated amounts and quantities."

unreasonable and a violation of Rule No. 5 by the respondent and affirmed by the district court.

In support of its position against refunds, the appellant, relying on National Labor Relations Bd. v. Guy F. Atkinson Co., 195 F.2d 141 (9th Cir. 1952), contends that it was innocent of any conscious violation of the rules and was unable to know, when it acted, that it was guilty of any misconduct.

We find this position untenable. The appellant cannot escape the responsibility for fake meter reading, late meter reading, unauthorized estimation of gas usage and the failure to uniformly apply the altitude adjustment factor because of an inadequate staff or the misconduct of an employee. Any loss occasioned thereby cannot be shifted to the customers.

Rules and regulations promulgated by the appellant may not be ignored but must be observed by it. The appellant may not ignore such rules as to some customers and observe them as to others. Southwestern Bell Telephone Co. v. Lee, 140 S.W.2d 132 (Ark. 1940).

The rule governing the duty of public utilities or companies to serve the public is well stated in the case of Birmingham Railway, Light & Power Co. v. Littleton, 77 So. 569 (Ala. 1917): "This duty to serve the public exists independent of statutes regulating the manner in which public service corporations or companies shall do business. It is imposed upon the public service corporation because it is organized to do a business affected with a public interest, and because the corporation has held itself out to the public as being willing to serve all members thereof." Messer v. Southern Airways Sales Co., 17 So.2d 679 (Ala. 1944); Gibbs v. Baltimore Gas Co., 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979 (1888).

The appellant's contention that the respondent, in its final order, indulged in retroactive rate making is without merit. The order has two distinct parts, both of which are permissible and within the statutory powers and constitutional limitations of the respondent. The first part of the order required prospective rule amendments to prevent the appellant from indulging in any long prorations and requiring the appellant to specifically adhere to the California Natural Gas Association Bulletin

TP–561 altitude chart. In other parts of the order the respondent imposed sanctions against the company for its unjustified use of long proration billing and for its failure to adhere to an altitude adjustment schedule which it had on file,[2] with the respondent, and which it applied to other parts of the service area.

It is a basic legal principle that a rate is made to operate in the future and cannot be made to apply retroactively, here, however, we find no evidence of an attempt by the respondent to apply a rate retroactively.

We now turn to the respondent's cross-appeal controverting that part of the judgment of the district court permanently enjoining it from requiring the appellant to retire and replace all of its Rockwell "150" meters in its Northern Nevada Division by December 31, 1970.

We agree with the finding of the district court that the respondent did not give the appellant adequate notice, before the commencement of the hearings on the 16th and 17th of April, 1968, that it would consider entering an order requiring the replacement of the Rockwell "150" meters.[3] Furthermore the respondent's chairman made it abundantly clear during the hearing that rate structure and safety were not involved and that the subject of the hearing was to be confined to meter reading and billing practices and methods.

It would be beyond the realm of reasonableness to accept the respondent's argument that because a meter is the basic instrument for meter reading that the question of replacement was properly before the commission.

We do not reach the respondent's other contentions in its cross-appeal.

The judgment of the district court is affirmed.

COLLINS, C. J., MOWBRAY and THOMPSON, JJ., and BABCOCK, D. J., concur.

---

[2]The record also indicates that the appellant had filed a letter with the respondent to the effect that it would adjust its billing to compensate for altitude changes.

[3]The record indicates that the Rockwell "150" measured gas usage favorable to the customer during the cold weather months.