SOUTHWEST GAS CORPORATION, A CALIFORNIA CORPORATION, APPELLANT, v. PUBLIC SERVICE COMMISSION OF NEVADA, AN ADMINISTRATIVE AGENCY OF THE STATE OF NEVADA, NOEL A. CLARK, CHAIRMAN, EVO A. GRANATA AND HEBER P. HARDY, AS MEMBERS OF THE COMMISSION, HARVEY'S RESORT HOTEL, HARVEY'S INN AND SAHARA-TAHOE HOTEL, RESPONDENTS.

No. 11534

August 14, 1980                                    614 P.2d 1080

*Guild, Hagen & Clark,* Reno, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City, and *Allison, Brunetti, MacKenzie & Taylor,* Carson City, for Respondents.

---

[1]The Governor, pursuant to art. 6, § 4, of the Constitution, designated Judge William P. Beko of the Fifth Judicial District Court to sit in the stead of MR. CHIEF JUSTICE MOWBRAY.

## OPINION

*Per Curiam:*

Southwest Gas Corporation appeals from an order by the district court affirming a Public Service Commission (PSC) order requiring appellant to refund overcharges to Harvey's Resort Hotel, Harvey's Inn and Sahara-Tahoe Hotel (hereinafter collectively referred to as respondent hotels). Southwest contends that the PSC erred by concluding that Southwest breached any duty to inform customers of the effects of a PSC order on service schedules and that the PSC's refund order is retroactive rate-making. We disagree and affirm.

Prior to November, 1973, respondent hotels were supplied natural gas by Southwest Gas Corporation according to the services and rates detailed in Southwest's Schedule NG–40.[1] Respondent hotels, upon their request, began receiving natural

[1]Schedule NG–40 (and its predecessors) contained Special Condition No. 1:

Service under this schedule, though considered to be firm service, is expressly represented as being inferior to service under the Utility's Schedule No. G–1 on file with the Federal Power Commission and NG–10, NG–30 and

gas service according to Schedule NG-10 in November, 1973. Schedule NG-10 guaranteed uninterrupted service in exchange for a more costly rate.

On September 15, 1974, however, PSC's General Order No. 18 became effective. General Order No. 18 established priorities for natural gas consumers based upon end-use, and eliminated insurance against service curtailment which had been previously afforded to customers under Schedule NG-10. In effect, the general order eliminated any difference in service received by respondent hotels under NG-40 and NG-10.

On April 18, 1975, Southwest Gas notified respondent hotels that, in light of General Order No. 18, they were no longer guaranteed uninterrupted service. The hotels' subsequent requests for service pursuant to the less costly Schedule NG-40 were denied.

A formal complaint was filed by respondent hotels with the PSC. The PSC found that Southwest Gas had breached its duty to inform respondent hotels of the effect of General Order No. 18 prior to April 18, 1975, and that Southwest Gas had violated its tariff provisions by refusing respondent hotels' requests for service pursuant to Schedule NG-40. Consequently, Southwest Gas was ordered to refund to the hotels an amount equal to the difference between NG-10 and NG-40 rates for the period of October 16, 1974, to September 30, 1975.[2] Southwest sought judicial review of the PSC's order. The district court affirmed the PSC's findings and refund award.

In reviewing an order of an administrative agency, the function of this Court, as well as that of the district court, is to review the evidence presented to the administrative body and determine whether that agency abused its discretion. Gandy v. State ex rel. Div. of Investigation, 96 Nev. 281, 607 P.2d 581 (1980); Urban Renewal Agency v. Iacometti, 79 Nev. 113, 397 P.2d 466 (1963). Our review of the record reveals that the PSC acted within the permissible limits of its discretion.

I.

This court has previously held that a utility has "the duty . . . to inform the customer of the optional schedules in order to

NG-70 on file with the Nevada Public Service Commission. Customers of the Utility on all of such schedules will receive 100 percent of their service requirements before any gas is made available to customers taking service under this schedule.

[2]General Order No. 18 became effective September 15, 1974. Southwest Gas had 30 days in which to notify respondents; therefore, overpayments began October 16, 1974, and continued until September 30, 1975.

enable the customer to select the schedule more beneficial to him". Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 93, 389 P.2d 387, 389 (1964). The record supports the PSC's finding that Southwest was aware that General Order No. 18 had equalized the service provided under NG–10 and NG–40 and yet failed to inform its customers of that fact. The PSC, therefore, did not err in finding that Southwest breached its duty.

## II.

Furthermore, Rule 7E of Southwest's tariff provision provides that if a customer elects service under a different applicable rate schedule, the change will become effective after the meter reading next following the date of such requests. Southwest violated its tariff provision by refusing to grant respondent hotels' requests for service pursuant to Schedule NG–40.

## III.

Finally, we reject Southwest's argument that the PSC's order to refund overpayments made by respondent hotels is tantamount to a retroactive rate application. A public utility rate can operate only prospectively. Southwest Gas Corp. v. Public Service Comm'n, 86 Nev. 662, 474 P.2d 379 (1970). Respondent hotels, in effect, were charged a premium for a priority of use that could not legally be provided. The hotels paid the more costly rate under NG–10, but received only the services offered under NG–40. The PSC merely ordered Southwest Gas to refund the overpayments. A future rate was not imposed retroactively. Thus, the PSC acted within its statutory powers and constitutional limitations. *Id.* at 668, 383.

Finding no error and no abuse of discretion, we affirm the summary judgment upholding the PSC's order.