SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, Appellant, v. THE PUBLIC SERVICE COMMISSION OF NEVADA, an Administrative Agency of the State of Nevada, and HEBER P. HARDY, EVO A. GRANATA and JANET S. MACDONALD, Commissioners, Respondents.

No. 11189

October 22, 1981                     634 P.2d 1200

*John Madariaga* and *Susan L. Oldham,* Reno, for Appellant.

*Richard H. Bryan,* Attorney General, and *George Keele,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, SPRINGER, J.:

This is an appeal from the district court's affirmation of an order entered by the Public Service Commission (PSC) in rate application No. 1289.

Sierra Pacific Power Company (Sierra Pacific) filed a rate increase application with the PSC on September 26, 1977, in which they requested $2,802,310. The application requested permission to raise electric rates due to increased fuel costs. The PSC held a public hearing on the application and on November 29, 1977, issued its Opinion and Order granting $1,158,410 of the $2,802,310 increase requested by Sierra Pacific.

Sierra Pacific filed a complaint in the district court, as provided for in NRS 704.540. This complaint alleged that the PSC

had erred in granting only a portion of the amount requested in the application. Sierra Pacific alleged that the PSC exceeded its statutory authority in its interpretation of accounting procedures and that the record before the PSC did not support the PSC's accounting treatment of certain energy sales.

We believe that both the PSC and the district court were correct and therefore affirm the judgment of the district court.

NRS 704.110(5) and NRS 704.185 permit public utilities to use a deferred energy accounting procedure to account for and recover increased costs incurred in the purchase of fuel or of power. The PSC promulgated General Order 21 to provide a mechanism whereby utilities could elect to use the deferred energy accounting procedure pursuant to these NRS provisions. By electing to follow accounting methods established by the PSC, a utility is enabled to recover these increased costs without having to go through the ordinary and relatively cumbersome rate increase process. Sierra Pacific used such deferred accounting to reflect changes in costs of fuels and purchased power, and filed with the PSC this rate application to recover incurred costs.

The controversy involves Sierra Pacific's sale of surplus power as "economy energy" and "interchange energy" to Pacific Gas and Electric Company (P.G. & E.) and Utah Power & Light Company (U.P. & L.) and the accounting method used to reflect the amounts received therefrom.

In this case, Sierra Pacific credited the amounts they received from P.G. & E. and U.P. & L. to Account 447, which is for "sales for resale," instead of Account 555, which is for "purchased power." The significance of this accounting treatment is that when the receipts from the sales are credited to Account 555, the ratepayer's liability for the increased fuel costs is immediately reduced by the amount of the sales. By crediting the receipts to Account 447, as Sierra Pacific contends they should be, the ratepayers bear the total increase in fuel costs, despite the fact that some of the energy produced from the fuel has been sold to other utilities.

The PSC, in reviewing these accounting practices, concluded that their approval of Sierra Pacific's procedure would be tantamount to approving an increase in Sierra Pacific's earnings without the benefit of a general rate increase application filed pursuant to NRS 704.100 and 704.110, contrary to General Order 21.

The PSC's order (Docket No. 1289) required that, among other things, all future gross receipts from economy energy

sales be credited by Sierra Pacific to Account 555. Here, as in the district court, Sierra Pacific argues that the order amended the language of the PSC's previous general order, in violation of the Nevada Administrative Procedure Act (APA), NRS 233B, which allegedly resulted in a denial of their due process rights of notice and opportunity to be heard. This argument is without merit.

The PSC's order is harmonious with the purpose behind deferred energy accounting and results in an immediate lowering of utility rates. The opinion accompanying the order states:

> Turning now to Account 555 we are of the opinion that the plain language of this account together with Section 2.42 of General Order No. 21 clearly contemplates and indeed requires the recording of net settlements associated with interchange energy transactions. We interpret net settlements in this respect to be the result of netting the gross receipts between Applicant and [other power companies with whom Sierra Pacific has interconnection agreements.]

The PSC's opinion decided what amount of certain energy sales should be credited to Account 555[1], and did not promulgate new regulations in violation of the APA.

Contrary to Sierra Pacific's further argument, the order of the PSC was supported by ample evidence which was introduced at the hearing. The function of this court in this instance is the same as that of the district court. We have reviewed the evidence presented to the administrative body and determined that their actions were neither arbitrary nor capricious. There was no abuse of discretion. Southwest Gas v. Pub. Serv. Comm'n, 86 Nev. 662, 474 P.2d 379 (1979); No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967). The judgment of the district court is affirmed.

GUNDERSON, C. J., and ZENOFF, Sr. J.,[2] and MOWBRAY, J., concur.

---

[1]A. This account shall include the cost at point of receipt by the utility of electricity purchased for resale. It shall include, also, net settlements for exchange of electricity or power, such as economy energy, off-peak energy for on-peak energy, spinning reserve capacity, etc. In addition, the account shall include the net settlements of transactions under pooling or interconnection agreements wherein there is a balancing of debits and credits for energy, capacity, etc. Distinct purchases and sales shall not be recorded merely because debit and credit amounts are combined in the voucher settlement.

[2]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER, who was disqualified. Nev. Const. art. 6, § 19; SCR 10.

MANOUKIAN, J., concurring:

Although I reach the same result as the majority opinion, I believe that it fails to go far enough in addressing the questions posed in this appeal. The background of NRS 704.110(5) and NRS 704.185 and the deferred accounting procedure is satisfactorily set forth in the majority opinion. My basic concern stems from the majority's failure to address definitions of technical terms and its failure to fully discuss the substantial evidence question.

Sierra Pacific Power (Sierra) elected to use the deferred accounting procedure, and after one year, filed an application for increased electrical rates to produce revenues of $2,802,310. A public hearing on this application was held before the Public Service Commission (PSC). In its order and opinion the PSC granted $1,158,410 of the requested increase determining that sales of surplus power ("economy energy"[1]) and interchange energy[2] to Pacific Gas and Electric Company (PG & E) and Utah Power and Light Company (UP & L) should have been credited to Account 555[3] rather than Account 447.[4]

---

[1]Economy energy is defined as, "Energy produced and supplied from a more economical source in one system, substituted for that being produced or capable of being produced by a less economical source in another system." *Glossary of Electric Utility Terms,* Edison Electric Institute (N.Y., N.Y.) p. 32.

[2]Interchange energy is defined as "Kilowatt hours delivered to or received by one electric utility system from another. They may be returned in kind at a later time or may be accumulated as energy balances until the end of a stated period. Settlement may be by payment or on a pooling basis." *Glossary of Electric Utility Terms,* p. 33.

[3]The parameters of what shall be included in Account 555 are enunciated in the Federal Energy Regulatory Commission Uniform System of Accounts, 18 CFR 101:

555 Purchased power.
A. This account shall include the cost at point of receipt by the utility of electricity purchased for resale. It shall include, also, net settlements for exchange of electricity or power, such as economy energy, off-peak energy for on-peak energy, spinning reserve capacity, etc. In addition, the account shall include the net settlements for transactions under pooling or interconnection agreement wherein there is a balancing of debits and credits for energy capacity, etc. Distinct purchases and sales shall not be recorded as exchanges and net amounts only recorded merely because debit and credit amounts are combined in the voucher settlement.

[4]That which is to be included in Account 447 is similarly outlined in 18 CFR 101, "447 Sales for resale. A. This account shall include the net billing for electricity supplied to other electric utilities or to public authorities for resale purposes."

The significance of this accounting treatment is that by crediting the income of the sales to Account 555, the ratepayers' liability for increased fuel costs is decreased by the gross amount of the off-system sales. By crediting the sales to Account 447, as Sierra asserts is proper, the profits are not reflected in the rate structure, but flow instead to Sierra's stockholders.

Sierra appeals the district court's affirmation of the PSC's opinion and order allowing only the 1.1 million rate increase. I agree with the majority that the PSC did not promulgate new regulations in violation of the Administrative Procedure Act (NRS 233B). Clearly, "an agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action." Matter of George, 579 P.2d 354, 358 (Wash. 1978). Analogously, "NRS 288.110 charges the board with that responsibility and great deference should be given to the agency's interpretation when it is within the language of the statute." Clark County School District v. Local Gov't, 90 Nev. 442, 446, 530 P.2d 117 (1974). See also, City of Los Angeles v. Public Utilities Commission, 542 P.2d 1371, 1383 (Cal. 1975). Unless the interpretation is plainly erroneous or inconsistent with the regulation, deference will generally be given to an administrative agency's interpretation of regulations it has drafted. McCulloch Gas Processing Corp. v. Black Hills Oil Marketers, Inc., 462 F.Supp. 834 (D.C.Wyo. 1978); Jordan v. Arnold, 472 F.Supp. 265 (M.D.Penn. 1979).

Here, the PSC's opinion merely decided what amounts, if any, of certain energy sales should be credited to Account 555. It was not, as Sierra asserts, the promulgation of new regulations in violation of NRS 233B. The Commission clearly acted within its authority.

Contrary to Sierra's position, the PSC did not determine that the sales were exchanges of energy under Account 555, but rather that "the plain language of this account [555] together with Section 2.42 of General Order 21 clearly contemplates and indeed requires the recording of the net settlements associated with *interchange energy transactions.*" (Emphasis added.) In its opinion, the PSC did note that Account 555 provides that the "net settlements for the *exchange* of electricity shall be recorded in that account . . . [and] that distinct purchases and sales shall not be recorded *as exchanges,*" however,

> [this] does not mean that distinct sales shall not be recorded in Account 555 but merely that the account shall not contain an entry reflecting only the *net amount* of purchases and sales as in the case of exchange power, such

that the gross amount of the purchases should be debited to Account 555 and the gross amount of sales should be credited to Account 555 without any netting.

This determination is supported by the record.

Mr. McElwee, Sierra's rate manager, testified that in a reverse situation (i.e., Sierra purchasing power from UP & L or PG & E), the entire expense would be booked in Account 555. In addition, all sales were made pursuant to Sierra's interconnection agreements with both PG & E and UP & L, there exists a "mutual assistance agreement to sell energy" between Sierra and UP & L, and purchases of power by Sierra from UP & L and PG & E are common.

Although Sierra's ratepayers do receive some net benefit from the sales because the increased generation slightly decreases kilowatt per hour production cost, the benefits under Sierra's proposed accounting adjusted the benefits of the sales to "accrue to [Sierra's] stockholders," through increased dividends. These economy energy sales are nontariff or "off system" sales. As indicated in the testimony of Dennis Polosky, chief rate engineer of the PSC, "even irrespective of deferred energy accounting, the benefits of such transactions should be apportioned to Nevada ratepayers. . . . Nevada ratepayers are in fact called upon to bear the costs of generation stations as well as transmission . . . lines, they should correspondingly be the recipients of their share of the benefits gained by the Company's [Sierra's] use of those facilities." *See* Re Public Service Co. of Oklahoma, 19 PUR 4th 190, 199 (1977) (" 'availability—not assured' sales constitute a sale of a firm customers' reserves . . . [i]t is only fair that the firm customers bearing the cost of the reserves receive the benefit" of Off-system sales). Clearly, there is substantial evidence to support the inclusion of the sales in Account 555. Southwest Gas v. Pub. Serv. Comm'n, 86 Nev. 662, 474 P.2d 379 (1979).

There is also substantial evidence to support that portion of the PSC's decision which designates that all future receipts from economy energy sales be credited to Account 555. The continuing interchange agreements between Sierra, UP & L and PG & E indicate that the sales would be identical to those in the instant case, in which we have found substantial evidence to support the PSC's determination relative to the inclusion of present sales in Account 555. I deem this language in the opinion merely interpretive insofar as future sales are concerned.

I find appellant's remaining contentions to be without merit and would also affirm the decision of the trial court.