CHARLES MARVIN; GARY TAYLOR; AND 400 TUSCARORA ROAD, LLC, FOR THEMSELVES AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED TAXPAYERS, APPELLANTS, *v.* CLAY FITCH; STEPHEN R. JOHNSON; RICHARD MASON; AND MICHAEL CHESHIRE, INDIVIDUAL MEMBERS OF THE STATE BOARD OF EQUALIZATION, RESPONDENTS.

No. 52447

May 27, 2010                                     232 P.3d 425

*Morris Peterson* and *Suellen Fulstone*, Reno, for Appellants.

*Catherine Cortez Masto*, Attorney General, *Keith D. Marcher*, Senior Deputy Attorney General, and *Dennis L. Belcourt*, Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider the application of absolute immunity to individual members of the State Board of Equalization (State Board). Absolute immunity is a broad immunity that is granted sparingly to individuals performing judicial or quasi-judicial functions. *State of Nevada v. Dist. Ct. (Ducharm)*, 118 Nev. 609, 615-16, 55 P.3d 420, 423-24 (2002). On appeal, appellants Charles Marvin, Gary Taylor, and 400 Tuscarora Road, LLC (collectively, the Taxpayers), argue that the members of the State Board do not qualify for absolute immunity because the State Board refused to perform its duty of equalizing property valuations throughout the state pursuant to NRS 361.395.[2] We disagree and conclude that the

---

[2]This appeal is limited to the liability of the individual members of the State Board pursuant to the district court's certification of the judgment pertaining to the individual members under NRCP 54(b).

State Board is performing a quasi-judicial function when determining whether to equalize property valuations, and its members therefore have absolute immunity.

## FACTS

The Taxpayers own residential property located in the Incline Village and Crystal Bay areas of Washoe County, Nevada. In 2007, the Washoe County Board of Equalization (County Board) determined that the county assessor had utilized improper and unconstitutional methods of appraising real property and, consequently, the County Board reduced the value of various properties in Washoe County. Allegedly, the County Board did not adjust or equalize the assessed value of the Taxpayers' properties.

In March 2007, the Taxpayers petitioned the State Board for relief from the County Board's failure to equalize the assessed value of their properties. The State Board conducted a hearing on the matter and determined that it lacked jurisdiction because the Taxpayers had failed to first petition the County Board, as required by NRS 361.360.[3] The Taxpayers subsequently filed a petition for judicial review of the State Board's decision and, within the same pleading, asserted a separate claim under 42 U.S.C. § 1983, alleging that their civil rights had been violated by the State Board's failure to perform its statutory duty to equalize property valuations pursuant to NRS 361.395. The § 1983 claim was also brought against Clay Fitch, Stephen Johnson, Richard Mason, and Michael Cheshire, individual members of the State Board.

The district court granted the petition for judicial review and (1) remanded the matter to the State Board and/or the County Board to determine whether the Taxpayers had complied with the provisions of NRS 361.420, (2) remanded the matter to the State Board to establish a record as to whether the Department of Taxation had complied with the requirement to ensure equalization throughout the state, and (3) ordered the State Board to comply with its duty to equalize property valuations throughout the state.

The individual members of the State Board moved to dismiss the § 1983 claim against them under NRCP 12(b)(5), arguing that they are entitled to absolute immunity. The district court granted the motion and dismissed the § 1983 claim against the individual members reasoning that "expos[ing] individual State Board [m]embers to civil rights claims based on their decision to raise values,

___

[3]On appeal, the members of the State Board made a motion to supplement the appellate record with a transcript of the hearing before the State Board wherein the State Board determined that it lacked jurisdiction. The Taxpayers filed an opposition to the State Board member's motion, as well as their own

lower values, or take no action when determining the equalization of values is inappropriate.''[4] The Taxpayers appeal this decision.

## DISCUSSION

For clarity, we recognize that although the Taxpayers filed both a petition for judicial review and a § 1983 civil rights claim in the court below, this appeal is confined to the application of absolute immunity to the Taxpayers' § 1983 civil rights claim alleging that individual State Board members are liable because they refused to equalize property valuations pursuant to NRS 361.395. The Taxpayers contend that their § 1983 claim rests on the State Board's refusal to undertake its statutory duty to equalize property valuations under NRS 361.395. However, the record before the district court and this court shows that the State Board refused to equalize property valuations because the Taxpayers failed to adhere to the administrative procedures for review. Although the State Board's decision to not equalize the Taxpayers' property valuations based on administrative procedures may have been erroneous according to the district court, the State Board engaged in an equalization decision-making process and did not simply fail to equalize as the Taxpayers contend. In resolving this appeal, we must first examine when absolute immunity is applicable and then analyze whether the State Board's process of equalizing property valuations is a quasi-judicial function subject to such immunity. Finally, we address the policy considerations supporting our conclusion that the equalization process is quasi-judicial and the State Board members are afforded absolute immunity.

### Standard of review

This court rigorously reviews a district court order granting a motion to dismiss pursuant to NRCP 12(b)(5). *Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009). And

---

motion that this court take judicial notice that the matter of statewide equalization did not appear on any State Board agenda for the relevant term. We denied the requested relief and do not consider the supplemental material from either party because neither the transcript nor the subject of the request for judicial notice were presented to or considered by the district court.

[4]We recognize that the district court may have commingled the petition for judicial review and the § 1983 civil rights claim when it reasoned that the State Board's determination that it did not have jurisdiction over the Taxpayers' petition was a quasi-judicial function. Regardless, we affirm the district court's outcome that absolute immunity is applicable. *See Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) (noting that this court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason).

we will accept the factual allegations of the pleading as true while construing those facts in favor of the nonmoving party. *Id.* Whether absolute immunity is an appropriate defense for the members of the State Board is a question of law. *Duff v. Lewis*, 114 Nev. 564, 568, 958 P.2d 82, 85 (1998). We review questions of law de novo. *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 629, 218 P.3d 847, 850 (2009).

*Judicial record*

The record before the district court and this court indicates that the Taxpayers brought an appeal before the State Board complaining that the County Board failed to perform its duty of equalizing property valuations. However, the State Board declined to undertake any equalization process because the Taxpayers had neglected to file a petition for review with the County Board and, therefore, failed to adhere to the administrative procedures for equalization relief. As such, the State Board determined that it lacked jurisdiction to hear the Taxpayers' appeal or to proceed with the equalization process. While the Taxpayers claim the § 1983 action is based upon the State Board's refusal to equalize, nothing in the record supports that conclusion. *See Carson Ready Mix v. First Nat'l Bk.*, 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (concluding that appellant bears the burden to make an adequate appellate record and noting that this court may not consider matters outside of the district court record on appeal); *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) (stating that "appellants are responsible for making an adequate appellate record" and "[w]hen an appellant fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision").

In its written decision, the State Board stated that it "found no record that the Taxpayer[s] requested the County Board for equalization relief or that the County Board took action to grant or deny equalization relief to the subject property as required by NRS 361.360(1)." Accordingly, the State Board concluded that, "[b]ased on the lack of a record made to or by the County Board with regard to request for relief, or that the County Board took action to grant or deny relief, the State Board did not accept jurisdiction to determine this matter." Even though the district court found that the State Board's decision to not equalize the Taxpayers' property valuations was incorrect, it was nevertheless a decision regarding the equalization process. Therefore, we must determine whether that decision and the equalization process in general are afforded absolute immunity.

*Absolute immunity*

On appeal, the Taxpayers challenge whether the individual members of the State Board are entitled to absolute immunity. Immunity " 'is a matter of public policy that balances the social utility of the immunity against the social loss of being unable to attack the immune defendant.' " *Ducharm,* 118 Nev. at 614-15, 55 P.3d at 423 (quoting James L. Knoll, *Protecting Participants in the Mediation Process: The Role of Privilege and Immunity,* 34 Tort & Ins. L.J. 115, 122 (1998)). Absolute immunity protects judicial officers from collateral attack and recognizes that appellate procedures are the appropriate method of correcting judicial error. *Id.* at 615, 55 P.3d at 424.

Generally, qualified immunity,[5] rather than absolute immunity, is sufficient to protect nonjudicial officers in the performance of their duties, *id.* at 617, 55 P.3d at 425 (quoting *Burns v. Reed,* 500 U.S. 478, 486-87 (1991)); however, in *Butz v. Economou,* the United States Supreme Court extended the application of absolute immunity to include various nonjudicial officers who participate in the judicial process. 438 U.S. 478, 513 (1978) (determining that the role of an administrative hearing examiner is " 'functionally comparable' to that of a judge"). Following *Butz,* courts have applied absolute immunity to individuals who perform quasi-judicial functions. *Mishler v. Clift,* 191 F.3d 998, 1007 (9th Cir. 1999) (concluding that individual members of the Nevada Board of Medical Examiners are entitled to absolute immunity for their quasi-judicial acts); *Ducharm,* 118 Nev. at 617, 55 P.3d at 425; *Duff,* 114 Nev. at 571, 958 P.2d at 87 (holding that a court-appointed psychologist was entitled to absolute immunity because he was acting as an extension of the court).

[Headnote 10]

To determine whether an individual is entitled to absolute immunity, the Supreme Court has adopted a "functional approach," which " 'looks to the nature of the function performed, not the identity of the [individual] who performed it.' " *Romano v. Bible,* 169 F.3d, 1182, 1186 (9th Cir. 1999) (quoting *Buckley v. Fitzsim-*

---

[5]Qualified immunity and absolute immunity are distinguishable. *Ducharm,* 118 Nev. at 615 n.9, 55 P.3d at 423 n.9. "[A]bsolute immunity defeats a suit at the outset of litigation as long as the official's actions were within the scope of the immunity." *Id.* Qualified immunity may also provide immunity from suit so long as the defendant's actions were not in violation of clearly established law. *See Mitchell v. Forsyth,* 472 U.S. 511, 525-27 (1985).

*mons*, 509 U.S. 259, 269 (1993) (internal quotation omitted)). The "functional approach" takes into consideration various factors including: whether the individual is performing many of the same functions as a judicial officer, whether there are procedural safeguards in place similar to a traditional court, whether the process or proceeding is adversarial, the ability to correct errors on appeal, and whether there are any protective measures to ensure the constitutionality of the individual's conduct and to guard against political influences. *Id*. at 1186-87; *see also Ducharm*, 118 Nev. at 616, 55 P.3d at 424-25.

Applying the "functional approach" to this case, and following our further analysis below, we determine that the State Board and its individual members perform a quasi-judicial function when deciding to equalize property valuations. Accordingly, we conclude that the individual members are entitled to absolute immunity in their performance of this quasi-judicial act.

*The State Board's duty to equalize property valuations is a quasi-judicial function*

The Nevada Constitution mandates that "[t]he [L]egislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory." Nev. Const. art. 10, § 1(1). The State Board is governed by NRS Chapter 361, which obligates the State Board to equalize property valuations throughout the state:

> [T]he [State Board] shall:
> (a) Equalize property valuations in the State.
> (b) Review the tax rolls of the various counties as corrected by the county boards of equalization thereof and raise or lower, equalizing and establishing the taxable value of the property.

NRS 361.395(1).We previously determined that, under the statutes, the State Board has two separate functions: "equalizing property valuations throughout the state and hearing appeals from the county boards." *State, Bd. of Equalization v. Barta*, 124 Nev. 612, 628, 188 P.3d 1092, 1102 (2008). The State Board's predominant concern, however, should be the guarantee of a uniform and equal rate of taxation. *Id*.

Although the statutes clearly provide that the State Board has a duty to equalize property valuations throughout the state, there appears to be a lack of certainty in the procedures for the equaliza-

tion process that has resulted in an ambiguity as to whether the process is an administrative or a quasi-judicial function. NRS 361.395(1) obligates the State Board to equalize property valuations, and NRS 361.395(2) and 361.405(1) require notice be given to property owners when equalization results in a proposed or actual increase to a property's valuation. However, NRS Chapter 361 lacks clarity as to the processes and procedures that the State Board undertakes in determining to equalize property valuations, equalization methods, and the relevant sequence of events. When the Legislature has addressed a particular matter with imperfect clarity, this court will consider the statutory scheme as a whole and any underlying policy in order to interpret the law. *See In re Orpheus Trust*, 124 Nev. 170, 174-75, 179 P.3d 562, 565 (2008).

The Taxpayers argue that the duty to equalize property valuations is an administrative function that does not incorporate the traditional attributes of a judicial proceeding and, therefore, absolute immunity should not apply. We disagree and conclude that the State Board's equalization process is a quasi-judicial function. Considering the factors in the "functional approach," the members of the State Board perform quasi-judicial functions because the equalization process requires the members to perform functions (fact-finding and making legal conclusions) similar to judicial officers, the process is adversarial, it applies procedural safeguards similar to a court, errors can be corrected on appeal, and the statutory scheme retains State Board members' independence from political influences.

*State Board members perform functions similar to judicial officers*

Judicial officers exercise independent judgment to "issue subpoenas, rule on proffers of evidence, regulate the course of . . . hearing[s], and make or recommend decisions." *Butz*, 438 U.S. at 513. The State Board is presented with evidence of property valuations from the county tax rolls or from interested property owners, and is required to make findings and issue decisions regarding the necessity and method of equalization. *See* NRS 361.395(1); NRS 361.385(1). Evaluating the necessity of equalization, State Board members have the ability to issue subpoenas and require witness testimony, NAC 361.712, as well as the authority to regulate the course of hearings and "hold such number of [hearings] as may be necessary to care for the business of equalization presented to it." NRS 361.380(1). Because State

Board members receive evidence, render decisions, and regulate hearings, we conclude that members of the State Board function like judicial officers.

### The equalization process is adversarial

Proceedings that are quasi-judicial "are usually adversarial in nature and provide many of the same features and safeguards that are provided in court." *Romano*, 169 F.3d at 1186. The State Board's annual meetings are open to the public and permit individuals to participate in person or be represented by an attorney. NRS 361.385(1). At the meetings, an individual may challenge a property's valuation recorded on the county tax rolls and submit evidence for the State Board's consideration "with respect to the valuation of his or her property or the property of others." *Id.*; *see* NRS 361.355. We conclude that the ability to contest the assessed value of one's own property or present evidence questioning the value of the property of others is a quintessential indication of the adversarial nature of the equalization process. Thus, we deem the State Board's equalization process to be adversarial in nature and "functionally comparable" to an adjudicatory proceeding. *See Butz*, 438 U.S. at 513.

### Procedural safeguards applied to the equalization process

Notice is a fundamental requisite of due process that is employed as a procedural safeguard in any judicial action. *See Browning v. Dixon*, 114 Nev. 213, 217, 954 P.2d 741, 743 (1998). Nevada's statutory scheme regulating the equalization process safeguards a person's due process rights by requiring that public notice be given for the State Board's annual meeting, at which the State Board considers increases to property valuations. NRS 361.380(2). The public notice requirement is accomplished through "publication in the statutes of the . . . time, place and purpose of [the annual meeting]," *see id.*, by posting notices at the Department of Taxation offices in Carson City, Reno, Las Vegas, and Elko, *see* NAC 361.686(1); and in accordance with statutory public meeting notice requirements, *see* NRS 241.020. In the event that the State Board proposes to increase the valuation of any property, the State Board is required to give specific notice to the interested property owner detailing when and where the property owner may appear and submit evidence of the property's value. NRS 361.395(2). If the State Board does increase the property's valuation, the property owner is entitled to another notice of the increased value. NRS 361.405(1). We conclude that NRS Chapter 361's notice require-

ments are sufficient procedural safeguards to ensure that the public is afforded due process throughout the State Board's equalization process.

### Ability to correct errors on appeal

Additionally, the "correctability of error on appeal" is another procedural "safeguard[ ] built into the judicial process [that] tend[s] to reduce the need for private damages actions." *Butz*, 438 U.S. at 512. Recognizing that the State Board's equalization process is adversarial, the Legislature provided that a taxpayer may seek judicial review of a State Board's determination or bring a lawsuit "in any court of competent jurisdiction in the State." NRS 361.420(2). "No taxpayer may be deprived of any remedy or redress in a court of law" for wrongs or deprivations resulting from the findings of the State Board. NRS 361.410(1). In such a case, a taxpayer may bring a lawsuit claiming that the property value assessment is "discriminatory in that it is not in accordance with a uniform and equal rate of assessment and taxation, but is at a higher rate of the taxable value of the property so assessed than that at which the other property in the State is assessed." NRS 361.420(4)(g). We determine that a taxpayers' ability to appeal the State Board's decisions and findings provides the appropriate remedy to correct errors and is indicative of a quasi-judicial proceeding.

### Protective measures to guard against political influences

Furthermore, a judge or quasi-judicial adjudicator should not allow political influences to affect his or her judicial conduct or judgment. NCJC Canon 2, Rule 2.4. The Legislature has attempted to protect the State Board members from the influence of political forces by creating strict membership qualifications. The State Board members are appointed by the governor and serve four-year terms. NRS 361.375(1) and (5). The State Board's membership must consist of one certified public accountant, one property appraiser, one member "versed in the valuation of centrally assessed properties," and two members "versed in business generally." NRS 361.375(2). Membership is further limited to no more than three members affiliated with the same political party, and no more than two members residing in the same county. NRS 361.375(3). No elected official or employee of an elected official may be appointed to serve, and no member can serve more than two full consecutive terms. NRS 361.375(4)-(5). We determine that the structure of the State Board's membership adequately shields its collective membership from political influence and allows them to function as neutral adjudicators.

Based on the foregoing, we conclude that the State Board performs a quasi-judicial function when deciding to equalize property valuations and, as such, its individual members are afforded absolute immunity from lawsuits based on their performance of this quasi-judicial act. *See Steinhart v. County of Los Angeles*, 223 P.3d 57, 63 (Cal. 2010) (recognizing that the board of equalization exercises quasi-judicial powers); *County of Adams v. Bd. of Equal.*, 566 N.W.2d 392, 397 (Neb. 1997) (stating that the actions of equaliz-ing property values between counties is quasi-judicial in nature); *Fayetteville Independent Sch. Dist. v. Crowley*, 528 S.W.2d 344 347 (Tex. Civ. App. 1975) (affirming that "a board of equalization is a quasi-judicial body, charged with . . . equalization . . . of assessments").

*Policy considerations*

In addition to the application of the "functional approach," our conclusion that the State Board members are entitled to absolute immunity is also supported by policy considerations, specifically, it facilitates the process and abides by legislative intent. "The discretion which . . . officials exercise with respect to the initiation of . . . proceedings might be distorted if their immunity from damages arising from that decision was less than complete." *Butz*, 438 U.S. at 515. The State Board members should be permitted to "make the decisions to move forward with a[ ] . . . proceeding free from intimidation or harassment." *Id.* at 516. The prospect of individual State Board members being subjected to litigation from every disgruntled property owner is likely to result in having State Board members who are reluctant or unable to perform their duties and will hinder the state's ability to recruit and retain qualified members.

Additionally, NRS Chapter 361 clearly demonstrates the Legislature's intent that the equalization process be open to the public and that the individual taxpayer be given notice of and the opportunity to participate in the State Board's valuation of his or her property. To conclude that the State Board's equalization process is a purely administrative function rather than a quasi-judicial function may preclude a taxpayers' ability to participate in this process.[6] If the equalization process was determined to be administrative, Nevada's taxpayers in general would not be assured of their adversarial right to participate in the meetings, present evidence, provide testimony, or seek judicial review. By concluding

---

[6]We do not address in this opinion whether Nevada's Administrative Procedure Act, codified in NRS Chapter 233B, permits judicial review of purely administrative functions.

that the State Board's equalization process is quasi-judicial, we honor the Legislature's intent and safeguard every taxpayers' right to meaningfully participate in the annual equalization process.

Accordingly, we affirm the district court's order dismissing the Taxpayers' § 1983 civil rights claim.

PARRAGUIRRE, C.J., and DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., concur.