**133 Nev., Advance Opinion** |

IN THE SUPREME COURT OF THE STATE OF NEVADA

VILLAGE LEAGUE TO SAVE INCLINE ASSETS, INC., A NEVADA NONPROFIT CORPORATION, ON BEHALF OF THEIR MEMBERS AND OTHERS SIMILARLY SITUATED; DEAN R. INGEMANSON, TRUSTEE OF THE LARRY D. & MARYANNE B. INGEMANSON TRUST; DEAN R. INGEMANSON, INDIVIDUALLY AND AS TRUSTEE OF THE DEAN R. INGEMANSON TRUST; J. ROBERT ANDERSON; LES BARTA; KATHY NELSON, INDIVIDUALLY AND AS TRUSTEE OF THE KATHY NELSON TRUST; ANDREW WHYMAN; ELLEN BAKST; JANE BARNHART; CAROL BUCK; DANIEL SCHWARTZ; LARRY WATKINS; DON & PATRICIA WILSON; AND AGNIESZKA WINKLER,
Appellants,
vs.
THE STATE OF NEVADA, BOARD OF EQUALIZATION; WASHOE COUNTY; WASHOE COUNTY TREASURER; AND WASHOE COUNTY ASSESSOR,
Respondents.

No. 63581

FILED

JAN 26 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a petition for judicial review of a State Board of Equalization reappraisal decision. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Reversed and remanded with instructions.*

17-2861

Norman J. Azevedo, Carson City; Snell & Wilmer, L.L.P, and Suellen Fulstone, Reno,
for Appellants.

Adam Paul Laxalt, Attorney General, and Dawn Buoncristiani, Deputy Attorney General, Carson City,
for Respondent Nevada State Board of Equalization.

Christopher J. Hicks, District Attorney, and Herbert B. Kaplan, Deputy District Attorney, Washoe County,
for Respondents Washoe County, Washoe County Treasurer, and Washoe County Assessor.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

This appeal is a continuation of a dispute between many taxpayers from the Incline Village and Crystal Bay areas of Washoe County and respondent Nevada State Board of Equalization concerning the State Board's failure to equalize property values as required by NRS 361.395 for tax years 2003-04, 2004-05, and 2005-06. In this appeal, we must determine whether the district court erred when it dismissed a petition for judicial review of the State Board's interlocutory administrative order and whether the district court's decision is appealable to this court. Additionally, we are asked to determine whether

_____

[1]The Honorable Kristina Pickering, Justice, voluntarily recused herself from participation in the decision of this matter. The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

the interlocutory administrative order issued by the State Board, requiring reappraisals of properties around Incline Village and Crystal Bay for the tax years in question, exceeded the Board's statutory authority by seeking to equalize property values nearly a decade before the date of the order.

Initially, we conclude that this court has jurisdiction to consider the district court's dismissal of the petition for judicial review. We further conclude that the district court erred when it dismissed the petition for judicial review because the State Board exceeded its statutory authority to order reappraisals pursuant to NRS 361.395. Accordingly, we reverse the district court order dismissing the petition for judicial review and instruct the district court to grant, in part, the petition for judicial review and vacate the State Board's interlocutory administrative order directing reappraisals of the properties in the Incline Village and Crystal Bay areas for the tax years in question.

## FACTS AND PROCEDURAL HISTORY

Appellant Village League to Save Incline Assets, Inc., filed a class action complaint in the district court in 2003 alleging, in relevant part, that the State Board failed to carry out its constitutional obligation to equalize property valuations in Incline Village and Crystal Bay and sought damages and declaratory relief directing the State Board to conduct the annual equalization of property values required by NRS 361.395. Respondents Washoe County, Washoe County Treasurer, and Washoe County Assessor (collectively, Washoe County) were also named in that action. Because Village League failed to administratively challenge the property valuations before filing the complaint, the district court dismissed the complaint, and Village League appealed the district court's decision in 2004 (2004 appeal).

Supreme Court
OF
Nevada

(O) 1947A

3

Before the 2004 appeal was decided, in opinions published in 2006 and 2008 arising from separate cases, this court determined that assessment methods used in 2002 to value properties at Incline Village and Crystal Bay for real estate tax purposes were unconstitutional. *See State ex rel. State Bd. of Equalization v. Barta*, 124 Nev. 612, 627, 188 P.3d 1092, 1102 (2008); *State ex rel. State Bd. of Equalization v. Bakst*, 122 Nev. 1403, 1416, 148 P.3d 717, 726 (2006). In *Barta* and *Bakst*, this court concluded, as a remedy, that because property is physically reappraised once every five years and the assessment methods used in 2002 were unconstitutional, the taxable values for the unconstitutionally appraised properties were void for the tax years beginning in 2003-04 and ending in 2007-08. *Barta*, 124 Nev. at 623-24, 188 P.3d at 1100; *Bakst*, 122 Nev. at 1416, 148 P.3d at 726. As a result, property taxes in those years were to be based on the taxable values previously established for the 2002-03 tax year. *Barta*, 124 Nev. at 628, 188 P.3d at 1103 (holding invalid any assessments based on the invalid 2002 taxable values); *Bakst*, 122 Nev. at 1416-17, 148 P.3d at 726 (invalidating the 2003-04 tax year assessments).

As to Village League's 2004 appeal, this court reversed in part the district court's dismissal of the declaratory relief claim seeking statutory equalization and remanded the case to the district court for it to decide the viability of the claim. *See Village League to Save Incline Assets, Inc. v. State ex rel. Dep't of Taxation*, Docket No. 43441 (Order Affirming in Part, Reversing in Part and Remanding, March 19, 2009). On remand, Village League filed an amended complaint and petition for a writ of mandamus, asserting that the State Board was required to ensure a

uniform and equal rate of assessment statewide.[2] The district court denied the petition, and Village League again appealed.

On appeal, this court again reversed in part the district court's decision. *See Village League to Save Incline Assets, Inc. v. State ex rel. Bd. of Equalization*, Docket No. 56030 (Order Affirming in Part, Reversing in Part and Remanding, February 24, 2012). The case was remanded, and the district court subsequently issued a writ of mandamus ordering the State Board to hold a hearing and fulfill its equalization duty for all tax years in which unconstitutional methodologies were used, beginning with the 2003-04 tax year. The State Board was also required to report back to the district court regarding its compliance with the writ.

In front of the State Board, Village League argued that all property owners in the Incline Village and Crystal Bay areas were entitled to the same remedy provided to the taxpayers in *Bakst* and *Barta*, which involved setting property values to the last constitutionally assessed level and issuing refunds. The State Board found that some properties located in the Incline Village and Crystal Bay areas were valued in 2003-04, 2004-05, and 2005-06 using methods that were unconstitutional but there was no evidence that these unconstitutional methods were used outside of the Incline Village and Crystal Bay areas for the tax years at issue.

---

[2]Appellants Dean R. Ingemanson, Trustee of the Larry D. & Maryanne B. Ingemanson Trust; Dean R. Ingemanson, individually and as Trustee of the Dean R. Ingemanson Trust; J. Robert Anderson; Les Barta; Kathy Nelson, individually and as Trustee of the Kathy Nelson Trust; and Andrew Whyman were added to the amended complaint/petition as plaintiffs/petitioners. In this appeal, we collectively refer to these appellants and appellant Village League to Save Incline Assets, Inc., as Village League.

Supreme Court
of
Nevada

(O) 1947A

5

The State Board concluded that, with the exception of NRS 361.333 concerning equalization by the Nevada Tax Commission, there were no statutes or regulations defining equalization by the State Board prior to 2010. Ultimately, the State Board determined that although no statewide equalization was required, regional equalization in the Incline Village and Crystal Bay areas was. Relying on a 2010 regulation, the State Board issued an interlocutory administrative order directing reappraisals of all properties in the Incline Village and Crystal Bay areas in which unconstitutional methodologies were used for the disputed tax years (hereinafter, Equalization Order).

As required, the State Board submitted its report to the district court indicating that it had complied with the writ of mandamus. Village League objected to the report, arguing that the Equalization Order did not comply with the writ.[3] Village League also filed a petition for judicial review in the district court challenging the Equalization Order and the State Board's power to order reappraisals of properties for the 2003-04, 2004-05, and 2005-06 tax years.[4] Further, the taxpayers from the *Bakst* and *Barta* cases (collectively, Bakst intervenors),[5] whose property values for the disputed tax years had already been established,

[3]We do not address Village League's arguments regarding its objection to the State Board's report because our reversal of the district court's order dismissing the petition for judicial review is dispositive.

[4]Only three years are at issue in this case because the State Board dealt with the remaining years outside of this case.

[5]The Bakst intervenors include appellants Ellen Bakst, Jane Barnhart, Carol Buck, Daniel Schwartz, Larry Watkins, Don & Patricia Wilson, and Agnieszka Winkler.

filed a motion to intervene in the district court action, arguing that the Equalization Order directing reappraisal of their properties threatened the previous final judgments. The district court granted the motion to intervene.

The State Board moved to dismiss the petition for judicial review. The district court granted the motion because it concluded that the Equalization Order was interlocutory and review of the State Board's final decision would provide an adequate remedy. Village League appeals the dismissal of the petition for judicial review, arguing that the State Board does not have the authority to order reappraisals. The Bakst intervenors appeal, making issue and claim preclusion arguments.

## DISCUSSION

### I.

As a threshold matter, the State Board argues that the district court properly refused to review the Equalization Order because it was a legislative action of general applicability, not an adjudicative action. The State Board and Washoe County also argue that this court lacks jurisdiction to consider this appeal because the district court did not enter a final, appealable judgment in a contested case. Finally, they maintain that neither Village League nor the Bakst intervenors are aggrieved parties because the reappraisal outcomes are unknown and the property values may not increase.

### A.

As an alternate basis for upholding the dismissal order, the State Board asserts that the equalization decision was not an adjudicative action subject to judicial review. Village League and the Bakst intervenors argue, however, that this court has already determined that equalization decisions by the State Board are adjudicative quasi-judicial

functions, not legislative. *See Marvin v. Fitch*, 126 Nev. 168, 232 P.3d 425 (2010). The State Board attempts to distinguish *Marvin* by arguing that it was decided in the context of hearing a valuation appeal from a county board.

In *Barta*, we observed that the State Board has two "separate functions: equalizing property valuations throughout the state and hearing appeals from the county boards." *Barta*, 124 Nev. at 628, 188 P.3d at 1102. However, we did not resolve whether the Board was engaged in a legislative or quasi-judicial function in that case as we did in *Marvin*. In *Marvin*, the underlying controversy did not concern the State Board hearing an appeal from a county board; rather, the State Board declined to equalize the taxpayers' property valuations because they failed to first petition the appropriate county board as required under NRS 361.360. *Id.* at 172, 232 P.3d at 428. Thus, this court was considering the equalization process in general, not a specific appeal from a county board, when deciding *Marvin*. *Id.* at 173, 232 P.3d at 429 ("Therefore, we must determine whether [the State Board's] decision and the equalization process in general are afforded absolute immunity."). Furthermore, this court stated that "NRS Chapter 361 clearly demonstrates the Legislature's intent that the equalization process be open to the public and that the individual taxpayer be given notice of and the opportunity to participate in the State Board's valuation of his or her property." *Id.* at 179, 232 P.3d at 432. Thus, *Marvin* is not inapposite to this case as the State Board suggests.

In *Marvin*, we concluded "that the State Board is performing a quasi-judicial function when determining whether to equalize property valuations." 126 Nev. at 170-71, 232 P.3d at 427. This court reasoned

that the function was quasi-judicial "because the equalization process requires the members to perform functions (fact-finding and making legal conclusions) similar to judicial officers, the process is adversarial, it applies procedural safeguards similar to a court, errors can be corrected on appeal, and the statutory scheme retains State Board members' independence from political influences." *Id.* at 176, 232 P.3d at 430. We also noted the adversarial nature of the State Board's annual meetings because they are open to the public, permit individual taxpayers to challenge a property tax assessment, require public notice, and allow taxpayers to be represented by an attorney. *Id.* at 177, 232 P.3d at 431.

Arguing that the Equalization Order in this case was a legislative action rather than an adjudicatory function, the State Board suggests that this case should be viewed differently. But this argument disregards the fact that the district court ordered the State Board to provide notice, hold hearings, and fulfill its statutorily mandated equalization duties for tax years beginning with the 2003-04 tax year, nearly a decade before. The hearings in front of the State Board were noticed through publication in numerous newspapers, and taxpayers throughout the state were allowed to present their individual and regional grievances. Testimony was offered by sworn witnesses, and documents were offered into evidence. Ultimately, the State Board rendered a decision, including findings of facts and conclusions of law determining the rights of the parties before it. Consistent with our decision in *Marvin*, we conclude that the State Board was engaged in a quasi-judicial function.

## B1.

The State Board and Washoe County also maintain that this court lacks jurisdiction to hear this appeal because the district court did not enter a final judgment in a contested case. We disagree.

"A party who is aggrieved by an appealable judgment or order may appeal from that judgment or order, with or without first moving for a new trial." NRAP 3A(a); *see also* NRS 233B.150 ("An aggrieved party may obtain a review of any final judgment of the district court by appeal to . . . the Supreme Court . . . ."). "A final judgment entered in an action or proceeding commenced in the court in which the judgment is rendered" constitutes an appealable order. NRAP 3A(b)(1). "An order granting or denying a petition for judicial review . . . is an appealable final judgment if it fully and finally resolves the matters as between all parties." *Jacinto v. PennyMac Corp.*, 129 Nev. 300, 303, 300 P.3d 724, 726 (2013). "To be aggrieved, a party must be adversely and substantially affected by the challenged judgment." *Id.*

The district court dismissed Village League's petition for judicial review of the Equalization Order without reviewing the merits of the order. While the Equalization Order itself did not determine how the State Board would equalize property values, the district court's dismissal of the petition was a final judgment because it effectively resolved the petition for judicial review and ended the parties' ability to challenge the State Board's power to order reappraisals of their properties in order to accomplish that equalization.

## B2.

As discussed in more detail below, the statutory grievance process allows only individual property owners to challenge the State Board's final equalization decision regarding property values, if those

Supreme Court
OF
Nevada

(O) 1947A

valuations increased. But the statutory scheme does not provide a remedy to review the State Board's authority to order reappraisals. *See* NRS 361.356(1)(a); NRS 361.357(1)(a); NRS 361.395(2)(a). Although the Equalization Order was interlocutory, NRS 233B.130(1) allows an aggrieved party to seek judicial review from "[a]ny preliminary, procedural or intermediate act or ruling by an agency in a contested case" when "review of the final decision of the agency would not provide an adequate remedy."[6] Pursuant to NRS 233B.032, a contested case is "a proceeding . . . in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Accordingly, because the district court's dismissal of their challenge to the Board's Equalization Order ended Village League's right to challenge the Board's authority to order reappraisals, and the Bakst intervenor's have raised questions concerning issue and claim preclusion over remedies already obtained in prior litigation, all parties are aggrieved, and we have jurisdiction to consider this appeal.

## C.

The district court determined that an adequate remedy exists because individual taxpayers "who disagree with the valuations of their property . . . [can] challeng[e] those valuations through the normal and standard process for challenging tax assessments." Village League and the Bakst intervenors argue that the normal and standard process is not

---

[6]Washoe County argues that the case is not ripe for review because the Equalization Order is not final and there is thus no concrete harm to be adjudicated. However, we conclude that this argument is without merit because NRS 233B.130(1) specifically provides for review of a nonfinal order when there is no "adequate remedy" available.

available to any property owner whose valuation has remained static or lowered, implicating due process concerns.

Individual challenges to county board assessments are permitted by statute. The statutory process begins with notice of the tax roll being completed "[o]n or before January 1 of each year." NRS 361.300(1). The taxpayer has until January 15 to appeal the valuation to the appropriate county board. NRS 361.356(1)(a); NRS 361.357(1)(a). Prior to the hearing, the property owner can obtain information from the assessor, such as "a copy of the most recent appraisal of the property, including, without limitation, copies of any sales data, materials presented on appeal to the county board of equalization or State Board of Equalization and other materials used to determine or defend the taxable value of the property." NRS 361.227(8). A taxpayer who disagrees with the decision of a county board may appeal to the State Board "on or before March 10" of each year. NRS 361.360(1).

Alternatively, taxpayers can directly challenge State Board assessment decisions in certain situations. When the State Board engages in its equalization function pursuant to NRS 361.395(1), a different appeals process is implicated. If a property valuation increases above the assessed value in the county tax roll, the State Board must, upon 10 days' notice,[7] hold a hearing where the taxpayer can "submit proof" that the valuation is incorrect. NRS 361.395(2)(a). Notably, a taxpayer may not

---

[7]NRS 361.395(2)(a) was amended in 2013 to require 30 days' notice in this instance, applicable to property valuation increases proposed by the State Board in fiscal years beginning on or after July 1, 2013. *See* 2013 Nev. Stat., ch. 481, §§ 1, 2, at 2897-98.

challenge an assessment pursuant to NRS 361.395(2)(a) when the valuation is decreased or remains the same.

Under the State Board's Equalization Order, the Washoe County Assessor was required "to reappraise all residential properties located in Incline Village and Crystal Bay to which an unconstitutional methodology was applied to derive taxable value during the tax years 2003-2004, 2004-2005, and 2005-2006." Additionally, the Washoe County Assessor was prohibited from "chang[ing] any tax roll based on the results of the reappraisal until directed to do so by the State Board." Finally, the State Board ordered the Washoe County Assessor to "separately identify any parcel for which the reappraised taxable value is greater than the original taxable value, along with the names and addresses of the taxpayer owning such parcels to enable the State Board to notify said taxpayers of any proposed increase in value."

The State Board was clearly attempting to engage in its equalization function pursuant to NRS 361.395(1) when it ordered the reappraisals. As such, an appeal directly to the State Board would be the only way for a taxpayer to challenge the reappraised taxable value. Pursuant to NRS 361.395(2)(a) and the Equalization Order, however, only taxpayers whose property valuations rise as a result of the reappraisal process are entitled to a hearing. But this remedy fails to take into consideration the remedies already afforded the Bakst intervenors and the affect those remedies have on the equalization process for the region.

Further, the State Board's jurisdiction is limited to equalizing property values and hearing appeals from county board valuations, not determining matters of law unrelated to valuation. *See Marvin*, 126 Nev. at 175, 232 P.3d at 430. Therefore, the Bakst intervenors whose property

valuations increase upon reappraisal, thus entitling them to a hearing pursuant to NRS 361.395(2)(a), would not be allowed to raise their issue or claim preclusion arguments to the State Board. Accordingly, we conclude that review of the State Board's final decision is not an adequate remedy for Village League or the Bakst intervenors.[8] Because we conclude that the Equalization Order was a ruling in a contested case and Village League and the Bakst intervenors did not have an adequate remedy, we further conclude that the district court erred by not reviewing the Equalization Order pursuant to NRS 233B.130(1).

## II.

Although the district court dismissed the petition before reaching its merits, Village League argues on appeal that NRS 361.395 does not provide the State Board with the power to order reappraisals. Additionally, Village League contends that the State Board unlawfully relied upon regulations adopted in 2010. The issue of the scope of the State Board's power pursuant to NRS 361.395 is a matter of statutory construction and a legal question which we review de novo. *J.D. Constr., Inc. v. IBEX Int'l Grp., LLC*, 126 Nev. 366, 375, 240 P.3d 1033, 1039 (2010).

## A.

The State Board has no inherent power but is limited to the powers conferred by statute. *Nev. Power Co. v. Eighth Judicial Dist. Court*, 120 Nev. 948, 955-56, 102 P.3d 578, 583-84 (2004). NRS

---

[8]Based on our conclusion, we decline to reach the Bakst intervenors' preclusion arguments.

361.395(1)(a) authorizes the State Board to "[e]qualize property valuations in the State." NRS 361.395(1)(b) further mandates that the State Board

> [r]eview the tax rolls of the various counties as corrected by the county boards of equalization thereof and raise or lower, equalizing and establishing the taxable value of the property, for the purpose of the valuations therein established by all the county assessors and county boards of equalization and the Nevada Tax Commission . . . .

When conducting de novo review, we interpret clear and unambiguous statutes based on their plain meaning. *J.D. Constr.*, 126 Nev. at 375, 240 P.3d at 1039-40. Because the county boards establish the taxable property valuations, not the State Board, the State Board's authority when performing its equalization duties pursuant NRS 361.395(1) is limited to reviewing the tax rolls that contain the property assessment values for all the counties.[9] After reviewing the tax rolls, the State Board must then adjust the taxable property values, if necessary, in order to equalize taxable values throughout the state. The equalization process

> involves an *adjustment of the value of property assessed* to conform to its real value. Thus,

---

[9]The State Board argues against interpreting the statute as limiting its review to only the tax rolls, which do not provide the Board with enough information to properly equalize. The State Board focuses on the fact that assessment ratio studies, as provided for in NRS 361.333, are necessary for the State Board to consider when equalizing. We agree that the statute does not prohibit the State Board from reviewing other information available, such as assessment ratio studies, in carrying out its equalization function. However, we note that reviewing additional information such as an assessment ratio study during the equalization process differs entirely from ordering a county assessor to reappraise property valuations.

Supreme Court
OF
Nevada

(O) 1947A

> equalization is a process applied to certain taxpayers and their property by which the assessed value of a taxpayer's property is adjusted so that it bears the same relationship of assessment value to the true tax value as other properties within the same taxing jurisdiction.

84 C.J.S. *Taxation* § 701 (2010) (emphasis added) (footnote omitted). There is no language in NRS 361.395 that can even arguably be construed as allowing the State Board to order a county to reappraise property values several years after the year of assessment. We therefore conclude that the plain language of NRS 361.395(1) does not provide the State Board with the authority to order reappraisals of property values.[10]

In 2010, the State Board adopted a regulation stating that it had the authority to "requir[e] the reappraisal by the county assessor of a class or group of properties in a county." NAC 361.665(1)(c). The State Board argues that this 2010 regulation applies retroactively to the tax years in question here, or, alternatively, at least provides guidance on the issue. The State Board also argues that this court must give deference to an administrative agency's reasonable interpretation of an enabling statute. Notably, in *Barta*, this court agreed "with the State Board's

---

[10]In further support of this conclusion, we note that the statutory scheme of NRS Chapter 361 provides a strict procedural timeline taxpayers must adhere to when challenging county board and State Board assessment valuation decisions. *See* NRS 361.300; NRS 361.356(1)(a); NRS 361.360(1)-(2); NRS 361.410. Were we to conclude that NRS 361.395(1) permitted the State Board to order reappraisals, there is no method by which a taxpayer could challenge the county board's decision. For example, if a taxpayer's taxable property value was increased based on the reappraisal ordered by the State Board during equalization, that taxpayer would not be afforded an appeal to a county board first, as is the normal process following assessment.

determination that the regulations [at issue] were *not* retroactive" to tax years that preceded the enactment of those regulations. 124 Nev. at 622, 188 P.3d at 1099 (emphasis added). We see no basis to apply the 2010 regulation, expressly or impliedly, to the tax years that precede its enactment.

Deference is given to an administrative agency's "interpretations of its governing statutes or regulations only if the interpretation is within the language of the statute." *UMC Physicians' Bargaining Unit v. Nev. Serv. Emp. Union/SEIU Local 1107*, 124 Nev. 84, 89, 178 P.3d 709, 712 (2008); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (stating that when determining whether a regulation exceeds statutory authority, courts should consider whether statutory text speaks to the authority granted to the agency, and if not, whether the regulation is based upon a reasonable construction of the statute). As we have concluded, the plain language of NRS 361.395 does not confer on the State Board authority to order reappraisals. Because NAC 361.665(1)(c)'s purported grant of power "is [not] within the language of" NRS 361.395, *UMC Physicians' Bargaining Unit*, 124 Nev. at 89, 178 P.3d at 712, or any other statutory provision, we conclude that the State Board's interpretation is unreasonable and in excess of its statutory authority.[11]

_____

[11]Because we determine that the State Board lacks authority to order reappraisals, we need not reach Village League's other arguments raised on appeal, including whether (1) the Equalization Order violates the constitutional mandate of uniformity, and (2) the State Board was unlawfully constituted. For the same reason, we need not address the Bakst intervenors' arguments of issue and claim preclusion except as discussed above.

## CONCLUSION

We conclude that NRS 361.395 does not provide the State Board with authority to order reappraisals and the 2010 regulation purporting to provide the State Board with such authority does not apply retroactively to the tax years at issue in this case. Further, as the interlocutory order affected appellants' rights and was otherwise unreviewable in a petition for review of the final judgment, the district court had jurisdiction to consider the petition for judicial review challenging it under NRS 233B.130(1). Accordingly, because the district court had jurisdiction and we conclude that the State Board's Equalization Order exceeds its statutory authority, we reverse the district court's order dismissing the petition for judicial review, and we remand this matter to the district court with instructions for it to grant the petition for judicial review, vacate the Equalization Order directing new appraisals, and conduct further proceedings to satisfy the requirements of NRS 361.395.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A