134 Nev., Advance Opinion 41

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MDC RESTAURANTS, LLC; LAGUNA RESTAURANTS, LLC; AND INKA, LLC, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE TIMOTHY C. WILLIAMS, DISTRICT JUDGE, Respondents, and PAULETTE DIAZ; LAWANDA GAIL WILBANKS; SHANNON OLSZYNSKI; AND CHARITY FITZLAFF, ALL ON BEHALF OF THEMSELVES AND ALL SIMILARLY SITUATED INDIVIDUALS, Real Parties in Interest. | No. 71289  FILED MAY 31 2018 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus or other extraordinary relief challenging a district court order concerning the interpretation of Nevada Constitution Article 15, Section 16.

*Petition granted.*

Clark Hill PLLC and Nicholas M. Wieczorek, Deanna L. Forbush, and Jeremy J. Thompson, Las Vegas,
for Petitioners.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager, Jordan J. Butler, and Don Springmeyer, Las Vegas,
for Real Parties in Interest.

18-20692

Jackson Lewis P.C. and Elayna J. Youchah and Phillip C. Thompson, Las Vegas,
for Amici Curiae Claim Jumper Acquisition Co., LLC; Landry's Inc.; Landry's Seafood House—Nevada, Inc.; Landry's Seafood House—Arlington, Inc.; Bubba Gump Shrimp Co. Restaurants, Inc.; Morton's of Chicago/Flamingo Road Corp.; and Bertolini's of Las Vegas, Inc.

Littler Mendelson and Rick D. Roskelley, Kathryn B. Blakey, Roger L. Grandgenett, II, and Montgomery Y. Paek, Las Vegas,
for Amici Curiae Briad Restaurant Group, LLC; Wendy's of Las Vegas, Inc.; Cedar Enterprises, Inc.; and Terrible Herbst, Inc.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The Minimum Wage Amendment (MWA) to the Nevada Constitution allows an employer who provides health benefits to pay a minimum wage of one dollar per hour less than an employer who does not provide health benefits. In this case, we are asked to clarify what health benefits an employer must provide to qualify for this privilege. We answer that the MWA requires an employer who pays one dollar per hour less in wages to provide a benefit in the form of health insurance at least equivalent to the one dollar per hour in wages that the employee would otherwise receive. Because the district court applied the substantive requirements of NRS Chapters 608, 689A, and 689B, rather than the standard set forth in this opinion, we grant petitioners' request for extraordinary relief.

 

## I.

### A.

The MWA is the result of a voter initiative called "The Raise the Minimum Wage for Working Nevadans Act." Posed as a statewide ballot question in 2004 and 2006, the measure declared that "[n]o full-time worker should live in poverty in our state" and that "[r]aising the minimum wage is the best way to fight poverty." Secretary of State, Statewide Ballot Questions, Question No. 6, p. 35 (2006), http://nvsos.gov/sos/home/showdocument?id=206. It stated that "[l]iving expenses such as housing, healthcare, and food have far outpaced wage levels for Nevada's working families" and that a higher minimum wage would help "make sure the workers who are the backbone of our economy receive fair paychecks that allow them and their families to live above the poverty line." *Id.* After the measure passed in both 2004 and 2006, it became Article 15, Section 16 of the Nevada Constitution. In relevant part, the MWA reads:

> Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living.

Nev. Const. art. 15, § 16(A).

SUPREME COURT
OF
NEVADA

(O) 1947A

When the MWA went into effect in 2006, the minimum wage was $5.15 per hour if an employer provided health benefits, and $6.15 if an employer did not provide health benefits. *See* Nev. Const. art. 15, § 16(A). The MWA requires that those wages be adjusted according to standards articulated in the text of the MWA itself. *See id.* Currently, as adjusted and annually announced by the Office of the Labor Commissioner, the upper-tier minimum wage is $8.25 per hour, and the lower-tier minimum wage is $7.25. *See* Press Release, State of Nevada Department of Business and Industry, *Nevada's minimum wage and daily overtime rates will not increase in 2017* (March 30, 2017), http://labor.nv.gov/uploadedFiles/labornvgov/content/Wages/2017%20Minimum%20Wage%20Press%20Release.pdf. To pay an employee the lower-tier minimum wage, the employer must "provide[ ] health benefits" to the employee. Nev. Const. art. 15, § 16. To provide health benefits means to make health insurance available to an employee and his or her dependents at a total cost to the employee for premiums not more than 10 percent of the employee's gross taxable income. *Id.*

B.

Real parties in interest include four named plaintiffs who sued on behalf of themselves and other similarly situated employees (collectively "employees"), alleging that their employers paid them the lower-tier minimum wage without providing sufficient health benefits under the MWA. Petitioners MDC Restaurants, LLC; Laguna Restaurants, LLC; and Inka, LLC (collectively "MDC") are the plaintiffs' employers and the

defendants in the suit in district court.[1] The employees moved for summary judgment, arguing that the health insurance offered by MDC did not qualify MDC to pay the lower-tier minimum wage because it did not comply with Nevada statutes placing substantive requirements on health insurance.

The district court granted the employees' motion, determining that an employer only provides health benefits sufficient to pay the MWA's lower-tier minimum wage if the employer offers health insurance that complies with NRS Chapters 608, 689A, and 689B. NRS Chapter 608 places substantive requirements on employer-provided health insurance and requires an employer who offers health benefits to provide insurance that complies with NRS Chapters 689A and 689B.[2] NRS Chapter 689A regulates "individual health insurance" and Chapter 689B regulates "group and blanket health insurance." Both chapters mandate when certain benefits must be covered, including coverage for expenses such as hospice care, prescription drugs, cancer treatment, the management and treatment of diabetes, severe mental illness, and alcohol or drug abuse. The district court reasoned that because the "limited benefit plans" offered by MDC did

---

[1]MDC and the employees previously came before us seeking to clarify what it means to *provide* health benefits, and we held that an employer may pay the lower-tier minimum wage if the employer offers or makes qualifying health insurance available, even if the employee does not enroll in a plan. *See MDC Rests., LLC v. Eighth Judicial Dist. Court ("MDC I")*, 132 Nev. Nev., Adv. Op. 76, 383 P.3d 262, 266-67 (2016).

[2]*See* NRS 608.1555 ("Any employer who provides benefits for health care to his or her employees shall provide the same benefits and pay providers of health care in the same manner as a policy of insurance pursuant to chapters 689A and 689B of NRS . . . ."); *see also, e.g.*, NRS 608.156(1) ("If an employer provides health benefits for his or her employees, the employer shall provide benefits for the expenses for the treatment of abuse of alcohol and drugs.").

not satisfy the statutory requirements of NRS Chapters 608, 689A, and 689B, the plans were not "health insurance" under the MWA sufficient to qualify MDC to pay the lower-tier minimum wage.

MDC now requests a writ of mandamus directing the district court to vacate its order granting partial summary judgment and either (1) refer the employees to the Labor Commissioner for an initial consideration of their wage complaints; or (2) direct the district court to evaluate the plans offered by MDC under NAC 608.102 instead of NRS Chapters 608, 689A, and 689B.

## II.

Whether to grant extraordinary relief is solely within this court's discretion. *See Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Generally, mandamus will issue to compel performance of a judicial act that the law requires as a duty resulting from office, *see* NRS 34.160, when "there is not a plain, speedy and adequate remedy in the ordinary course of law," NRS 34.170. Where, as here, the petitioners instead seek clarification of a legal issue of first impression, mandamus can nonetheless be appropriate when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197-98, 179 P.3d 556, 559 (2008). However, "such relief must be issued sparingly and thoughtfully due to its disruptive nature" in litigation. *Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev., Adv. Op. 101, 407 P.3d 702, 709 (2017). Such a petition for a writ of advisory mandamus should be granted only "when the issue presented is novel, of great public importance, and likely to recur." *Id.* at 708 (quoting *United States v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994)).

While we generally deny such petitions, articulating the standard for when an employer who offers health benefits can pay the lower-tier minimum wage is an issue of statewide importance that needs clarification. In fact, the Legislature recently passed legislation attempting to answer this exact question, but it was vetoed by the Governor. *See* Letter from Governor Sandoval to Secretary of State Cegavske, *RE: Assembly Bill 175 of the 79th Legislative Session* (June 9, 2017) [hereinafter *Veto of A.B. 175*], http://gov.nv.gov/uploadedFiles/govnvgov/Content/News_and_Media/ Press/2017_Images_and_Files/AB175_VETO.pdf.[3] And our state's district courts, as well as the federal district court, have been grappling with the issue presented in this petition as well. *See, e.g., Tyus v. Wendy's of Las Vegas, Inc.*, No.: 2:14–CV–0729–GMN–VCF, 2017 WL 4381680 (D. Nev. Sept. 28, 2017); *Hanks v. Briad Rest. Grp., LLC*, No.: 2:14–CV–00786– GMN–PAL, 2017 WL 4349227 (D. Nev. Sept. 29, 2017); *Abrams v. Peppermill Casinos, Inc.*, No. 3:16–CV–0454–MMD (VPC), 2017 WL 2485381 (D. Nev. June 8, 2017); *Tarvin v. Hof's Hut Rest., Inc.*, No. A-16- 741541-C (Eighth Judicial District Court, filed August 11, 2016). Thus,

---

[3]The Governor's veto emphasized that this court already clarified the issue presented in A.B. 175, and that "[i]mposing a rigid, statutory definition on constitutionally required 'health benefits' not only conflicts with the flexible approach called for in the Nevada Constitution, but it also risks upsetting the [MWA's] careful, incentive-based balance that Nevada's voters approved in 2006." *Veto of A.B. 175, supra*, at 2. The Governor also expressed concern that the bill would require health insurance that would exceed the cost of paying an additional one dollar per hour in wages and create an incentive for employers to stop offering health insurance altogether. *Id.* In addition to these concerns, the veto warned of potential negative consequences for Nevada's workers and small businesses, such as receiving less hours at work, decreasing the number of available jobs, and resulting in a higher cost of providing health insurance. *Id.* at 1-2.

 

because the petition presents legal issues of statewide importance requiring clarification, and our decision will promote judicial economy and administration by assisting other jurists, parties, and lawyers, we exercise our discretion to consider the merits of this petition.

## III.

MDC argues that the Labor Commissioner should have primary jurisdiction to resolve whether the plans in this case qualify as health insurance under NAC 608.102. As discussed *infra*, NAC 608.102 purports to set forth the requirements that a health insurance plan must meet to qualify an employer who offers the plan to pay the MWA's lower-tier minimum wage. MDC argues that the text of the MWA leaves a definitional gap when it comes to "health insurance" and the Labor Commissioner, having issued NAC 608.102 to fill that gap, should be the first to give input as to whether a specific plan meets those qualifications.

"[T]he doctrine of primary jurisdiction occasionally requires courts to refrain from exercising jurisdiction, so that technical issues can first be considered by a governmental body." *Richardson Constr., Inc. v. Clark Cty. Sch. Dist.*, 123 Nev. 61, 66, 156 P.3d 21, 24 (2007). Whether to withhold determination of an issue and give primary jurisdiction to an agency—the Labor Commissioner in this instance—is within the discretion of the district court. *Nev. Power Co. v. Eighth Judicial Dist. Court*, 120 Nev. 948, 962-63, 102 P.3d 578, 587-88 (2004). In determining whether to grant an agency primary jurisdiction, a court is guided by: "(1) the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue, (2) the need for uniform resolution of the issue, and (3) the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities." II Richard

J. Pierce, Jr., *Administrative Law Treatise* § 14.1, at 1162 (5th ed. 2010); *see also Richardson Constr.*, 123 Nev. at 66, 156 P.3d at 24 ("Two policies underlie this doctrine: (1) a desire for uniform regulation, and (2) the need for a tribunal with specialized knowledge to make initial assessments of certain issues.").

We reject MDC's argument that the Labor Commissioner should make the initial determination of what health insurance an employer must offer to qualify to pay employees the lower-tier minimum wage. While primary jurisdiction may apply "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body," *Nev. Power*, 120 Nev. at 962, 102 P.3d at 587-88 (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)), at issue in this case is the meaning of a provision in the Nevada Constitution. This case requires interpretation of the MWA, which is a responsibility that we cannot abdicate to an agency. *See* Pierce, *supra*, at 1172 ("No court would refer a pure issue of constitutional law to an agency for initial resolution."); *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *Baker v. Carr*, 369 U.S. 186, 211 (1962) (recognizing that the Supreme Court is the "ultimate interpreter of the Constitution").

Further, the question before the court is a legal one, and not one that requires the special expertise of an agency to explain technical factors necessary for the resolution of the issue. *Cf., e.g., Nev. Power*, 120 Nev. at 962-63, 102 P.3d at 578-88 (considering whether an agency should have primary jurisdiction to determine "the appropriate transformer loss factor" and "appl[y] its expertise to determine the percentage of electricity used by

 

the transformers in the conversion process"). Rather, the MWA has been in effect for over ten years, and the Labor Commissioner has already carefully and thoughtfully provided input on this legal issue by enacting NAC 608.102. In fact, the Legislature also recently tried its hand at defining the substantive requirements of a health insurance plan such that an employer would qualify to pay the lower-tier minimum wage. *See* A.B. 175, 79th Leg. (Nev. 2017). However, the Governor vetoed the bill citing, in part, our recent decision in *Western Cab Co. v. Eighth Judicial District Court*, 133 Nev., Adv. Op. 10, 390 P.3d 662 (2017), as having answered the question, and, in other part, rejecting the imposition of a "rigid, statutory definition on constitutionally required 'health benefits.'" *Veto of A.B. 175*, *supra*, at 2. It strikes us as inappropriate to defer a question of constitutional interpretation to an agency on the heels of the head of the state's executive branch nullifying legislative action that would have answered the same question—especially when the Governor's veto was, in part, based on the recognition that it is this court's responsibility to interpret the MWA.

Finally, while the Labor Commissioner is tasked with enforcing the labor laws of this state, the plain language of the MWA grants employees a private cause of action to enforce their right to a minimum wage. *See* Nev. Const. art. 15, § 16(B) ("An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section . . . ."). Thus, the agency's resolution of this issue is not necessary for uniform enforcement of a regulation, because the MWA creates a private cause of action for employees against an employer for violations of the MWA. On top of all of these considerations, we also note

that granting primary jurisdiction to the Labor Commissioner at this stage in the litigation, when the employers raised primary jurisdiction for the first time nearly two years after the complaint was filed, would unduly delay the resolution of this issue before the court. *See* Pierce, *supra*, at 1162 (recognizing that courts may consider whether any factors favoring allocation of initial decision-making responsibility to an agency would be outweighed by undue delay in resolving the issue). Accordingly, we decline to cede primary jurisdiction to the Labor Commissioner.

## IV.

MDC argues that the district court incorrectly applied the requirements of NRS Chapters 608, 689A, and 689B—statutory provisions mandating substantive requirements for health insurance—to the MWA. We agree with MDC that these statutory provisions do not set the constitutional standard for the quality of health insurance that allows an employer to pay the lower-tier minimum wage.

## A.

In *Western Cab*, which was decided after the district court's grant of partial summary judgment in this case, the court looked to NAC 608.102, rather than NRS Chapters 608, 689A, or 689B, for examples of "health insurance." 133 Nev., Adv. Op. 10, 390 P.3d at 669-70 (analyzing whether the MWA is preempted by ERISA). In relevant part, NAC 608.102 requires an employer who pays the lower-tier minimum wage to offer health insurance that "[c]overs those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto, if such expenses had been borne directly by the employee."

 

As a result, both parties look to clarify the meaning of "those categories of health care expenses that are generally deductible" in NAC 608.102. MDC argues that a plan that provides coverage for *any* expenses that might be deductible on a federal income tax return qualifies as "health insurance" and therefore allows an employer to pay the lower-tier minimum wage. The employees retort that an equally reasonable interpretation of NAC 608.102 is that a plan must cover *all* benefits that could be deductible on federal income tax returns, but they actually assert that employers must provide comprehensive or major medical insurance policies to employees to pay the lower-tier wage. Both arguments fail to articulate a constitutional standard for the MWA, however, because the definition of the term "health insurance" in the MWA is not wed to a statutory-type analysis of the NAC or to the provisions of the Internal Revenue Code. Rather, those regulatory schemes are primarily reference points and useful illustrations of the types of benefits and coverages that insurance must cover to qualify as *health* insurance.

At issue in this case, however, is not the types of benefits provided and whether they are *health* or some other category of benefits, for which a reference to NAC 608.102, NRS 681A.030, 26 U.S.C. 213(d)(1)(A), or even *Black's Law Dictionary* may be helpful.[4] Rather, the issue presented

_____

[4]For instance, NAC 608.102 references 26 U.S.C. § 213, which allows a person to deduct expenses for "medical care" from that person's federal income tax obligation. Deductible expenses incurred for "medical care" include, in part, payments for "the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." 26 U.S.C. § 213(d)(1)(A). Similarly, "health insurance" is also defined elsewhere in the law. For example, NRS 681A.030 defines "health insurance" as "insurance of human beings against bodily injury, disablement or death by accident or accidental means, or the

by the parties is whether there is some minimum quality or substance of health insurance that an employer must provide for the employer to pay the lower-tier minimum wage under the MWA. This question was not argued in *Western Cab*, and it is evident from the parties' arguments that NAC 608.102 is an unworkable standard for making such a determination because there are numerous items that can be included in an insurance plan that insures against expenses relating to bodily injury and sickness.

To provide just *any* one of those benefits, as MDC urges, would allow an employer to qualify for the lower-tier minimum wage with the provision of even the most meager health insurance plan, such as one dental cleaning per year. This would leave employees with a lower wage, and no real benefit in return—a result that would leave the upper tier of the MWA without significance. On the other hand, to require provision of *all* conceivable health coverage benefits, as the employees suggest, would require an employer to provide health benefits at a cost much greater than the one dollar per hour of wages saved under the lower tier. This interpretation would disincentivize employers from providing health insurance in lieu of paying an extra dollar per hour in wages, which would decrease the significance of the lower tier of the MWA. Thus, to give effect

---

expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto, together with provisions operating to safeguard contracts of health insurance against lapse in the event of strike or layoff due to labor disputes." *Black's Law Dictionary* also provides a definition for "health insurance," calling it "[a] contract or agreement whereby an insurer is obligated to pay or allow a benefit of pecuniary value with respect to the bodily injury, disablement, sickness, death by accident or accidental means of a human being, or because of any expense relating thereto, or because of any expense incurred in prevention of sickness, and includes every risk pertaining to any of the enumerated risks." *Black's Law Dictionary* (6th ed. 1998).

SUPREME COURT
OF
NEVADA

(O) 1947A

to the entirety of the MWA's two-tiered approach, qualifying health benefits must lie somewhere in between these two extremes, such that both tiers of the MWA have purpose. Our task is to find a guiding principle in the text, history, and purpose of the MWA and articulate a workable standard to assess whether a health insurance plan is sufficient to qualify an employer to pay the lower-tier minimum wage.

## B.

Questions of constitutional interpretation are reviewed de novo. *MDC I*, 132 Nev., Adv. Op. 76, 383 P.3d at 265. "The goal of constitutional interpretation is 'to determine the public understanding of a legal text' leading up to and 'in the period after its enactment or ratification.'" *Strickland v. Waymire*, 126 Nev. 230, 234, 235 P.3d 605, 608 (2010) (quoting 6 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 23.32 (5th ed. 2013)). Where the meaning of a constitutional provision "is clear on its face, we will not go beyond that language in determining the voters' intent or to create an ambiguity when none exists." *Miller v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1120 (2008) (footnote omitted). However, where a provision is ambiguous or susceptible to reasonable but inconsistent interpretations, "we may look to the provision's history, public policy, and reason to determine what the voters intended." *Id.* We look to those sources to give the constitutional provision the meaning that an "intelligent, careful voter" would ascribe to it. 16 Am. Jur. 2d *Constitutional Law* § 75, at 435 (2009).

When voters passed the MWA they sought to provide higher wages to employees, or in the alternative, health insurance in order to "fight poverty" and "ensure that 'workers who are the backbone of our economy receive fair paychecks that allow them and their families to live above the

poverty line.'" *MDC I*, 132 Nev., Adv. Op. 76, 383 P.3d at 266 (quoting Nevada Ballot Questions 2006, Nevada Secretary of State, Question No. 6 § 2(6)). This purpose is reflected in the text of the MWA, which mandates that an employer pay employees $8.25 per hour, or in the alternative, $7.25 per hour plus offer health benefits. Nothing in the text or purpose of the MWA, however, suggests that the voters intended to create one tier that was inherently more or less valuable to employees than the other. Rather, the tiers are different means to the same end—the upper-tier minimum wage fights poverty by providing higher wages to employees, while the lower tier fights poverty in the form of a lower wage but the addition of health benefits.

Given that the MWA provides two tiers in furtherance of the same purpose, common sense dictates that an employer who pays the lower-tier minimum wage must offer health benefits that, at the very least, fill the one-dollar gap in value between the $7.25 per hour lower-tier minimum wage and the $8.25 per hour upper-tier minimum wage. Therefore, "health benefits" must mean the equivalent of one extra dollar per hour in wages to the employee, but offered in the form of health insurance as opposed to dollar wages. *See Calop Bus. Sys., Inc. v. City of L.A.*, 984 F. Supp. 2d 981, 1003 (C.D. Cal. 2013) (noting that Los Angeles' similar two-tiered ordinance created "a minimum wage that certain employers must pay, and permits them either to pay it all in cash or through a combination of cash and benefits contributions").

We hesitate to ascribe any further substantive requirements to health benefits beyond this simple meaning found within the text and purpose of the MWA. *See* 16 Am. Jur. 2d *Constitutional Law* § 3, at 325 (2009) ("[C]onstitutions traditionally do not deal in details, but enunciate

Supreme Court
of
Nevada

(O) 1947A

the general principles and general directions which are intended to apply to all new facts which may come into being and which may be brought within these general principles or directions."). It is unlikely in enacting the MWA that the voters considered and intended to incorporate the entirety of Nevada's statutory scheme regarding health insurance into the meaning of "health benefits." *See Dist. of Columbia v. Heller*, 554 U.S. 570, 576 (2008) ("In interpreting [the Constitution], we are guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'") (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931) (alterations in original)). Nor should we afford such a meaning to health benefits when it might relate or connect the MWA to an ERISA plan, such that ERISA preemption concerns would arise in the enforcement of the MWA. *See Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 278 P.3d 632, 639 (Wash. 2012) (presuming "that an initiative is constitutional, just as [a court] presumes the constitutionality of a statute duly enacted by the legislature"); *see also Calop Bus. Sys.*, 984 F. Supp. 2d at 1003 (where a two-tiered minimum wage law that did "not require that employers provide health benefits, dictate the level or type of health benefits an employer must provide, or state which health benefit plan an employer must choose" was not preempted by ERISA). Instead, the simplest and most straightforward meaning of "health benefits" is a benefit in the form of health insurance at least equivalent to an additional one dollar per hour in wages. This ensures that employees may receive an equal benefit under either tier of the MWA, in furtherance of the MWA's stated purpose of fighting poverty. *See Opinion of Justices to House of Representatives*, 425 N.E.2d 750, 752 (Mass. 1981) ("[W]e must, if possible,

SUPREME COURT
OF
NEVADA

(O) 1947A

16

construe the amendment so as to accomplish a reasonable result and to achieve its dominating purpose.").

Accordingly, an employer is qualified to pay the lower-tier minimum wage to an employee if the employer offers a benefit to the employee in the form of health insurance of a value greater than or equal to the wage of an additional dollar per hour, and covers "the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Nev. Const. art. 15, § 16. An employer who pays the lower-tier minimum wage will have the burden of showing that it provided the employee with a benefit in the form of health insurance equal to a value of at least an additional dollar per hour in wages. If an employer cannot offer such insurance to an employee, the employer must pay the employee the upper-tier minimum wage.

## IV.

We therefore grant petitioners' request for extraordinary relief and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its order granting partial summary judgment and hold further proceedings in accordance with this opinion. In doing so, we clarify that an employer may pay the MWA's lower-tier minimum wage to an employee if the employer offers health insurance at a cost to the employer of the equivalent of at least an additional dollar per hour in wages, and at a cost to the employee of no more than 10 percent of the employee's gross taxable income from the employer. However, because applying our holding to the health insurance offered in this case requires further development in the district court, we withhold judgment as to whether the

 

employers in this case qualified to pay one dollar per hour less in wages to employees who were offered health insurance.

_____, J.
Pickering

We concur:

_____, C. J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich